**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JENNIFER SALLER,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 15-2279** |
| | : | |
| **QVC, INC.,** | : | |
| **Defendant.** | : | |

# MEMORANDUM

**SITARSKI, M.J.** **June 24, 2016**

Pending before the Court is Plaintiff's Motion for a Protective Order and to Quash Third-Party Subpoenas (ECF Nos. 36), Defendant's response and supplemental response in opposition thereto, (ECF Nos. 37, 43), and Plaintiff's reply to Defendant's supplemental response (ECF No. 44).[1] For the reasons that follow, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

The facts and posture of this case are well-known to the Parties, so the Court provides only a brief recitation of the details pertinent to this motion. Jennifer Saller ("Plaintiff") commenced the underlying action in April 2015, alleging that her former employer, QVC, Inc., ("Defendant"), violated the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et seq*., ("FMLA") and Americans with Disabilities Act, 42 U.S.C. § 1201, *et seq*., ("ADA"). (Compl., ECF No. 1; Am. Compl., ECF No. 2). As to the alleged FMLA violation, Plaintiff seeks damages "equal to her lost wages, salary, employment benefits and other compensation denied or lost, liquidated damages, costs, reasonable expert witness fees, attorney's fees, and equitable relief," (Am. Compl. ¶¶ 30, 37); as

[1] The Honorable C. Darnell Jones, II referred this motion to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (ECF No. 38).

to the alleged ADA violation, she seeks compensatory and punitive damages, (*id.* ¶ 43).

On October 25, 2015, Plaintiff responded to Defendant's First Set of Interrogatories. (Def. Resp. in Opp'n Ex. A, ECF No. 37-2). In response to Interrogatory No. 10, in which Defendant asked "for any job that [Plaintiff] ha[d] applied for since leaving QVC in 2014," Plaintiff stated she had worked for: (1) Kaly [Clothing] ("Kaly") from approximately April 2014 to present; (2) Whole Foods Market, Inc. ("Whole Foods") from May 20, 2014 to June 2, 2015; and (3) Monkey Fish Toys ("Monkey Fish") from October 13, 2015 to present. (*Id.* ¶ 10). On May 2, 2016, Defendant served Plaintiff with notice of its intent to subpoena Whole Foods, Kaly, and Monkey Fish. (Def. Resp. in Opp'n Ex. B, ECF No. 37-2). The subpoenas sought: all documents concerning Plaintiff's employment, medical history, and complaints of discrimination, as well as any documents concerning Plaintiff not covered by the above requests. (*Id.*).

Plaintiff objected to the subpoenas, and the parties attempted to resolve the dispute. (Def. Resp. in Opp'n ¶¶ 23-28, ECF No. 37; Pl. Mem. of Law 3-4, ECF No. 36-1). On May 5, 2016, Plaintiff provided a supplemental document production of her filed tax documents for tax year 2014 and her IRS Form W-2 for tax year 2015. (Def. Resp. in Opp'n ¶ 29). On May 9, 2016, the parties agreed that Defendant would not serve any third-party subpoenas until May 13, 2016, in order to give Plaintiff the opportunity to produce additional documents and information. (Def. Resp. in Opp'n Ex. F, ECF No. 37-3).

On May 13, 2016, Defendant served Plaintiff with a notice of intent to serve Whole Foods with a revised subpoena, seeking production of the following information:

> 1. All documents concerning [Plaintiff's] personnel files;
>
> 2. All documents concerning [Plaintiff's] job performance, including but not limited to any performance reviews or

evaluations, disciplinary actions, training, promotion and/or demotion;

3. All attendance records, payroll records, salary records, pay stubs, time cards, time sheets, records of pay raises or bonuses, work production (standards and output) records, records of off premises work orders or assignments, W-2 forms, and/or 1099 forms;

4. All documents concerning any benefits that [Plaintiff] received, including but not limited to health insurance, vision insurance, dental insurance, long or short term disability insurance, life insurance, pensions, and/or 401(k) plans and your matching thereof, if any, and documents that reflect the value of employment benefits that [Plaintiff] received including, but not limited to, copies of all benefit plans and policies and documents that reflect their cost;

5. All documents concerning [Plaintiff's] termination, resignation and/or cessation of work for your company;

6. All documents concerning [Plaintiff's] request(s) for leave pursuant to the [FMLA];

7. All documents concerning [Plaintiff's] request(s) for accommodation pursuant to the [ADA], including but not limited to documents concerning any accommodations offered by the company to [Plaintiff] and her response(s) thereto, and documents concerning any accommodation provided to [Plaintiff] during her employment with the company; and

8. All documents concerning any complaints by [Plaintiff] about unequal treatment, discrimination, and/or retaliation, including but not limited to any complaints under the [FMLA] and/or the [ADA], and your company's investigation thereof and the outcome or status thereof.

(Def. Resp. in Opp'n Ex. G, ECF No. 37-3). Defendant agreed not to serve the revised proposed subpoena until May 19, 2016.[2] (Def. Resp. in Opp'n ¶ 38; Def. Resp. in Opp'n Ex. H, ECF No.

[2] Defendant agreed it would serve identical subpoenas on Plaintiff's current employers,

37-3).

On May 18, 2016, Plaintiff provided a second supplemental document production containing pay stubs and her payroll records from all of her post-termination employers, and benefits information from her employment at Whole Foods.[3] (Def. Resp. in Opp'n ¶ 40). Additionally, on May 18, 2016, Plaintiff filed the instant motion for a protective order and/or to quash the third-party subpoenas. (Pl. Mot., ECF No. 36). Defendant filed its response in opposition on June 1, 2016. (Def. Resp. in Opp'n, ECF No. 37), and Defendant filed a supplemental response on June 14, 2016.[4] (Def. Supp. Resp. in Opp'n, ECF No. 43). On June 17, 2016, Plaintiff filed a reply to Defendant's supplemental response. (Pl. Reply, ECF No. 44). The matter is fully briefed and ripe for disposition.[5]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3) governs motions to quash or modify a subpoena. As an initial matter, a subpoena served under Rule 45 must fall within the scope of proper discovery under Rule 26(b)(1). *Green v. Cosby*, 314 F.R.D. 164, 169 (E.D. Pa. Mar. 21, 2016);

---

Kaly and Monkey Fish, but only addresses the subpoena directed to Whole Foods in its present briefing.

[3] On May 24, 2016, Plaintiff made a third supplemental document production containing emails between herself and job recruiters, her response to a Craigslist advertisement for employment at Monkey Fish, and other documents relating to her job search. (Def. Resp. in Opp'n ¶ 41).

[4] Defendant's supplemental response was untimely. However, the Court permitted Defendant to file its supplemental response on June 14, 2016, and permitted Plaintiff to reply by June 17, 2016.

[5] The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b).

*Sinclair Cattle Co. v. Ward*, No. 14-CV-1144, 2015 WL 6167488, at *1 (M.D Pa. Oct. 20, 2015). Thus, the subpoenaing party must initially demonstrate that it seeks "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). If the subpoena is within the general scope of discovery, then the burden shifts to the party opposing the subpoena to establish that Rule 45(d)(3) provides a basis to quash the subpoena.[6] *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. May 15, 2014). The court is required to quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). To ensure compliance, the court is authorized to "impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney" responsible for issuing and serving a subpoena who fails to take reasonable steps to avoid imposing undue burden or expense. Fed. R. Civ. P. 45(d)(1).

The burden of the party opposing the subpoena "is particularly heavy to support a motion

---

[6] As a general rule, only the subpoenaed party may seek to quash a subpoena. *New Park Entm't L.L.C. v. Elec. Factory Concerts, Inc.*, No. 98–775, 2000 WL 62315, at *4 (E.D. Pa. Jan. 13, 2000). "However, an exception to this rule exists where a party claims that it has some personal right or privilege with respect to the subject matter sought in the subpoena directed to a nonparty." *Id.*; *see also Kida v. EcoWater Sys. LLC*, No. 10–4319, 2011 WL 1883194, at *2 (E.D. Pa. May 17, 2011).

Plaintiff in this case has standing to move to quash the subpoenas Defendant wishes to serve on her post-termination employers, as she has a personal right or privilege to the employment records sought in those subpoenas. *See Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 239 (E.D. Va. Nov. 7, 2012) (citing various jurisdictions finding that a party possesses a personal right in the information contained in his or her employment records sufficient to confer standing to challenge subpoenas directed to employers).

to quash as contrasted to some more limited protection such as a protective order." *In re Domestic Drywall*, 300 F.R.D. at 239 (internal quotation marks omitted); *see also Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012) (moving party bears a "heavy burden" of demonstrating that an enumerated need for quashing the subpoena exists). Under Rule 26(c), a party may move for a protective order in the court where the action is pending, and upon a showing of "good cause," the court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . . [by] forbidding the disclosure or discovery," Fed. R. Civ. P. 26(c)(1)(A), or by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters," Fed. R. Civ. P. 26(c)(1)(D). The party seeking a protective order bears the burden of showing that good cause exists to limit or foreclose discovery, and must demonstrate a particular need for protection. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). When discovery is sought from a non-party, "[b]roader restrictions may be necessary to prevent a non-party from suffering harassment or inconvenience." *See Avago Techs. U.S., Inc. v. IPtronics, Inc.*, 309 F.R.D. 294, 297 (E.D. Pa. Sept. 15, 2015) (citing *Frank v. Honeywell Int'l, Inc.*, No. 15-mc-00172, 2015 WL 4770965, at *4 (E.D. Pa. Aug. 13, 2015)).

## III. DISCUSSION

Defendant's revised subpoenas will command Whole Foods, Kaly, and Monkey Fish to produce: (1) Plaintiff's entire personnel file (Request One); (2) specific documents relating to the terms of Plaintiff's employment, such as her pay and benefits, her performance, and her termination (Requests Two through Five); and (3) Plaintiff's subsequent FMLA, ADA, and discrimination complaints (Requests Six through Eight). For the reasons set forth below, the

Court finds that Defendant has failed to carry its initial burden with respect to its requests for Plaintiff's entire personnel file (Request One) and subsequent complaints of discrimination (Requests Six through Eight). However, requests two through five are relevant and narrowly tailored, and Plaintiff has failed to show that the subpoenas must be quashed under Rule 45(d)(3), or that a protective order should issue under Rule 26. Accordingly, Defendant may subpoena Plaintiff's former and current post-termination employers to obtain the information in requests two through five only.

**A. Request for Entire Personnel File**

Defendant seeks to require Plaintiff's post-termination employers to produce their entire personnel files for Plaintiff. I conclude that this request is overbroad.

The "permissible scope of discovery is broad, [but] it is not limitless." *Jones v. Lyneer Staffing Sols., Inc.*, No. 13-cv-2534, 2014 U.S. Dist. LEXIS 31820, at *3 (D.N.J. Mar. 12, 2014). Courts have routinely found blanket requests for a plaintiff's entire personnel or employment file to be impermissibly broad. *See, e.g., Henry v. Morgan's Hotel Grp.*, No. 15-cv-1789, 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (quashing an overbreadth third-party subpoena seeking "all documents and communications . . . referring or relating to [the plaintiff's] . . . personnel files."); *Singletary*., 289 F.R.D. at 241 (quashing third-party subpoena for "the complete employment file"); *Lewin v. Nackard Bottling Co*., No. CV 10–8041, 2010 WL 4607402, at *1 (D. Ariz. Nov. 4, 2010) (holding subpoena for former employers' entire personnel file was overbroad).

Defendant generally argues that Plaintiff's entire personnel file is relevant to the issue of mitigation and computation of damages. (Def. Mem. of Law 7-8). However, the cases cited by Defendant support the determination that a request of this nature is impermissibly broad. For

instance, Defendant cites to *Zeller v. S. Cent. Emergency Med. Servs. Inc.*, No. 13-cv-2854, 2014 WL 2094340, at *6 (M.D. Pa. May 20, 2014), in which the court allowed the defendant to subpoena the plaintiff's post-separation employers, finding the subpoena language "narrow and not overly broad" because it sought specific categories of documents from the employers. *Id.* at *6. The *Zeller* court specifically distinguished the question before it from the issue presented in *Boykins v. inVentive Commercial Servs., L.L.C.*, No. 11–7354, 2014 WL 413538 (D.N.J. Feb. 4, 2014), in which the defendant's request for the plaintiff's entire personnel file from her current employer was deemed overly broad and intrusive into the plaintiff's recognized privacy interests. *Id.* Insofar as the subpoena in this case requests Plaintiff's entire personnel file, it is more like the subpoena quashed in *Boykins* than allowed in *Zeller*. *Zeller* does not support Defendant's argument that it is entitled to Plaintiff's entire personnel file from her post-termination employers.

Accordingly, the Court finds that Defendant, the party seeking production, has failed to carry its initial burden of demonstrating that this portion of the third-party subpoenas is within the scope of permissible discovery. Thus, Defendant shall modify the subpoenas it intends to serve on Whole Foods, Kaly and Monkey Fish by removing Request One.

**B. Request for Subsequent FMLA, ADA, and Discrimination Complaints**

Defendant seeks to require Plaintiff's post-termination employers to produce records relating to FMLA, ADA, and discrimination complaints Plaintiff may have lodged against them. (Def. Resp. in Opp'n Ex. G, ECF No. 37-3). Defendant has failed to show the relevance of this information.

"Relevance is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Green*, 314 F.R.D. at 171 (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also*

*Henry*, 2016 WL 303114, at *3 (stating the definition in *Oppenheimer* continues to apply after the 2015 amendment to Fed. R. Civ. P. 26(b)(1)). Although the scope of discovery is broad, "it is not unlimited . . . and should not serve as a fishing expedition." *Provine v. Ambulatory Health Servs., Inc.*, No. 13-cv-0334, 2014 WL 47771, at *2 (M.D. Pa. Jan. 6, 2014); *see also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 189 (3d Cir. 1999). Subpoenaed information "is not relevant to 'subject matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation." *Barry v. Medtronic, Inc.*, No. 16-47, 2016 WL 1056783, at *1 (E.D. Pa. Mar. 17, 2016) (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990)). Thus, "discovery may be denied where, in the court's judgment, the inquiry lies in a speculative area." *Id*.

Defendant generally argues "documents relating to FMLA leave and ADA accommodation requests and incidents of discrimination to which [Plaintiff] *may have been subjected* after leaving QVC" are relevant because "[Plaintiff] has put that history at issue by filing this lawsuit." (Def. Resp. in Opp'n ¶ 48; Def. Mem. of Law 9). However, Defendant has not offered any factual basis for its allegation that Plaintiff *may* have made subsequent complaints of discrimination, particularly since Plaintiff stated in her interrogatory responses that she has not filed any claim of discrimination with any administrative agency, except for her claim against QVC. (Def. Resp. in Opp'n Ex. A ¶ 6, ECF No. 37-2). Further, Defendant has failed explain how subsequent requests for FMLA or ADA accommodation Plaintiff may have made are relevant to the claims or defenses in this matter, which pertains solely to Plaintiff's allegations against QVC.

Accordingly, the Court finds Defendant, the party seeking production, has failed to carry its initial burden of demonstrating that this portion of its third-party subpoena is within the scope

of permissible discovery. Thus, Defendant shall modify the subpoenas it intends to serve on Whole Foods, Kaly and Monkey Fish by removing Requests Six, Seven and Eight.

**C. Requests for Specific Documents Relating to Term of Plaintiff's Employment**

In requests two through five, Defendant seeks information related to Plaintiff's job performance (Request Two), her attendance and compensation records (Request Three), her benefits (Request Four), and her termination or cessation of work, if applicable (Request Five). Defendant shall be permitted to subpoena Plaintiff's post-termination employers to obtain these documents.

First, Defendant has carried its burden of demonstrating that the information in requests two through five falls within the general scope of discovery allowed under Rule 26(b). As Defendant points out, the information sought in these document requests may prove relevant to Plaintiff's mitigation of damages after her termination. (See Def. Resp. in Opp'n Ex. G, ECF No. 37-3). Courts within this Circuit have held that employment records setting forth dates of full-time versus part-time employment and the rate of pay assist in determining "the amount [a terminated employee] could have earned with reasonable diligence," and are relevant to the mitigation issue. *Hite v. Peters*, No. 07-4492, 2009 U.S. Dist. LEXIS 51894, at *12-13 (D.N.J. June 19, 2009). Likewise, disciplinary and other performance records are also potentially relevant to Plaintiff's efforts to reasonably mitigate her damages, as such documents may demonstrate if Plaintiff rejected certain employment benefits available to her or if her general job performance caused her to be passed up for opportunities with additional benefits. *See Kimes v. Univ. of Scranton*, No. 3:14-CV-00091, 2015 WL 778376, at *3 (M.D. Pa. Feb. 24, 2015); *Cornell v. Jim Hawk Truck Trailer, Inc.*, 298 F.R.D. 403, 407 (N.D. Iowa 2014) (performance evaluations

and disciplinary records of subsequent employers could show that the plaintiff's post-termination earnings suffered because of disciplinary issues). Since Defendant bears the burden of proving any failure to mitigate, it is entitled to records relevant to that calculation. *See e.g.*, *Zeller*, 2014 WL 2094340, at *5; *Kimes*, 2015 WL 778376, at *3; *see also Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. Feb. 24, 2010) (plaintiff conceded mitigation documents were relevant). Furthermore, the Court finds that Defendant's narrowly tailored requests seeking this information from Plaintiff's post-termination employers are not overly broad and are proportional to the needs of this case.

Plaintiff argues that she has already provided all responsive information relevant to her mitigation of damages, and thus requests two through five seek production of duplicative information. (Pl. Reply 1, 6). Specifically, Plaintiff asserts that she has produced her tax returns, W-2s, pay stubs, and benefits information. (*Id.*). I find that Defendants may subpoena Plaintiff's post-separation employers for her pay and benefits information for two reasons. First, even though Plaintiff provided interrogatory responses and produced documents, the information produced represents only the material in her possession, and therefore may not be complete. *See Langen v. Wells Fargo Bank*, No. 11-cv-3369. 2012 WL 4473305, at *2-3 (C.D. Ill. Sept. 26, 2012); *Hite*, 2009 U.S. Dist. LEXIS 51894, at *13-14 n.3 (rejecting the argument that a party is precluded from seeking additional documents after being provided some documentation). Second, Defendant is entitled to serve third-party subpoenas "to test the veracity of [the opposing party's] assertion that they have produced all documents they were required to produce." *New Park*, 2000 WL 62315, at *4; *see also Med. Tech., Inc. v. Breg, Inc.*, No. 10-00100, 2010 WL 3734719, at *4 (E.D. Pa. Sept. 21, 2010) (holding that it was not unreasonably duplicative to allow

a party that received some produced documents to supplement its production and test the veracity that the opposing party had produced all required documents); *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2012 WL 298480, at *4 (E.D. Pa. Jan. 31, 2012) (same). Moreover, while there may be some duplication in the third-parties' production, a subpoenaing party cannot practically "frame its request to eliminate the possibility of duplication and . . . ensure that it receives all of the documents it seeks from third parties." *New Park*, 2000 WL 62315, at *4. Though requests two through five may result in the production of some duplicative information, Defendant is entitled to subpoena Plaintiff's post-separation employers for the documents in requests two through five to ensure that it has complete information regarding Plaintiff's mitigation efforts.

Since Defendant has carried its burden of demonstrating that requests two through five seek information within the permissible scope of discovery, the burden shifts to Plaintiff to demonstrate that the subpoenas must be quashed under Rule 45(d)(3), or demonstrate that good cause exists for the issuance of a protective order under Rule 26. *See Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am. Inc.*, No. 10-mc-222, 2011 WL 239655, at *2 (E.D. Pa. Jan. 25, 2011); *Green*, 314 F.R.D. at 169-70.

Plaintiff has failed to carry her heavy burden of demonstrating that the third-party subpoenas must be quashed under the Rule 45(d)(3) factors. *See City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008) ("[I]t is [movant's] burden to establish the requirements of Rule 45 as the party seeking to quash the subpoenas."). Plaintiff argues that Defendant's proposed subpoenas did not allow her a reasonable time to object, do not allow the subpoenaed parties reasonable time to comply, and pose

an unreasonable burden. (Pl. Mot. ¶11). The first assertion is unavailing because Plaintiff's own time to object is not a listed factor under Rule 45(d)(3).[7] The second and third arguments are unpersuasive because Plaintiff lacks standing to challenge a third-party subpoena based on the amount of time that the responding third-party will have to comply or the burden it may face in doing so. *See e.g.*, *Green*, 314 F.R.D. at 169 n.5, 172; *Pangerl v. Peoria Unified Sch. Dist.*, No. 14-00836, 2016 WL 354744, at *7 (D. Ariz. Jan. 29, 2016) ("[A] party to a lawsuit does not have standing to move to quash a subpoena issued to a non-party on inadequate time to comply . . . ."); *Levitin v. Nationwide Mut. Ins.*, No. 12–cv–34, 2012 WL 6552814, at *5 (S.D. Ohio Dec. 14, 2012) ("Here, the subpoenas are directed to Plaintiff's prior employers. Thus, only Plaintiff's prior employers have standing to challenge the subpoenas on the ground that production of the subpoenaed documents would pose an undue burden expense."). Plaintiff also generally asserts that the subpoenas may result in the production of material that is protected or otherwise privileged. (*See* Pl. Mot. ¶ 11). However, Plaintiff has not explained how documents in the possession of her post-termination employers are privileged or protected, and her boilerplate objection fails to satisfy the heavy burden necessary to quash under Rule 45. *See L.W. v. Lackawanna Cty., Pa.*, No. 14-1610, 2015 WL 1499865, at *2 (M.D. Pa. Apr. 1, 2015). Therefore, Plaintiff has not shown that Defendant's subpoenas on her post-termination employers must be quashed under Rule 45(d)(3)(A).

---

[7] In any event, Plaintiff did have sufficient time to object. As reviewed above, Plaintiff filed the instant motion on May 18, 2016, more than two weeks after Defendant served notice of its intent to serve the third-party subpoenas. Therefore, Plaintiff's contention that she did not have sufficient time to object, in addition to failing to satisfy a Rule 45(d)(3) category, is also factually incorrect.

Insofar as Plaintiff is moving for a protective order under Rule 26(c), Plaintiff has the burden of demonstrating good cause. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994); *see also Cipollone*, 785 F.2d at 1121 (movant party has the burden of demonstrating good cause by showing the need for protection). "'Good cause' . . . exists when disclosure will result in a 'clearly defined and serious injury to the party seeking the protective order.'" *Pepsi-Cola*, 2011 WL 239655, at *2 (citing *Pansy*, 23 F.3d at 786). To determine whether good cause exists, the court balances the requesting party's need against the injury that may result. *Pansy*, 23 F.3d at 786. Further, "[b]road allegations of harm, unsubstantiated by specific examples or articulable reasoning, do not satisfy the Rule 26(c) test." *Cipollone*, 785 F.2d at 1121. Without "a showing that a defined and serious injury will result . . . , a protective order should not be issued." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 485 (3d Cir. 1995).

Here, Plaintiff generally asserts that Defendant's subpoenas will burden her employment relationships with her current and former post-separation employers. Plaintiff cites to *Kimes v. University of Scranton*, in which the court recognized that allowing third-party discovery from a plaintiff's current employer could burden the employment relationship. *Kimes*, 2015 WL 778376, at *4. However, *Kimes* ultimately does not support the Plaintiff's argument because the court permitted the defendant to subpoena the plaintiff's current employer for discovery bearing on mitigation if, after fourteen days, the plaintiff failed to provide that information. *Id*. Here, Plaintiff has already had an opportunity to provide the materials sought, and has made three additional document productions; however, she may not have provided all responsive materials sought in requests two through five, and Defendant is entitled to take reasonable steps to ensure it has all relevant information. Plaintiff also cites to *Henry v. Morgan's Hotel Group*, in which the

court did not permit the defendant to subpoena the plaintiff's past employers for employment records because the subpoenas could harm the plaintiff's ability to find work in the future. *Henry*, 2016 WL 303114, at *2. *Henry* is distinguishable on its facts. In that case, plaintiff was a waiter, and defendant sought to subpoena a restaurant group owning sixteen restaurants; thus, the court considered that plaintiff's future ability to find work could be impeded if a large restaurant group became aware of his lawsuit. *Id.* In this case, Plaintiff's post-termination employers are in different industries from one another, and from her prior employer. The Court is aware of, and takes seriously, the considerations addressed by the courts in *Kimes* and *Henry*; however, under the facts of this case, Plaintiff has failed to demonstrate that a clearly defined and serious injury would inure *to her* if her post-termination employers were subpoenaed for the information relevant to mitigation.

Accordingly, Defendant may subpoena Plaintiff's post-termination employers for the narrowly tailored categories of information set forth in requests two through five.[8]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to quash and for protective order is granted in part. Defendant may not subpoena Plaintiff's prior employer, Whole Foods, or her current employers, Kaly and Monkey Fish, for her entire personnel file or for information pertaining to any FMLA, ADA or discrimination complaints she may have lodged. However, Defendant may subpoena those non-parties for the narrowly tailored categories of information set forth in requests

[8] Plaintiff argues this Court should impose sanctions on Defendant for its "fail[ure] to avoid undue burden and expense under Rules 26 and 45 of the Federal Rules of Civil Procedure." (Pl. Mem. of Law 1). Plaintiff has not provided any legal or factual support for her request for motions, and does not address this issue in her memorandum of law. (*See* Pl. Mem. of Law 1). Accordingly, the Court denies Plaintiff's request for sanctions against Defendant.

two through five of Defendant's subpoena included as Exhibit G to its Response in Opposition. The non-parties shall be given ten (10) days to respond to the subpoenas, as revised consistent with the directives set forth herein. An appropriate order follows.

BY THE COURT:

/s/Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE