IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER SALLER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 15-2279 |
| | : | |
| QVC, INC., | : | |
| Defendant. | : | |

MEMORANDUM

SITARSKI, M.J.                                                              July 29, 2016

Pending before the Court is Plaintiff's Motion for Sanctions and to Compel Production of Specific Documents (Pl. Mot., ECF No. 40), Defendant's response in opposition thereto, (Def. Resp., ECF Nos. 47), and Plaintiff's supplemental memorandum (Pl. Supp. Mem., ECF No. 48).[1] For the reasons that follow, Plaintiff's Motion for Sanctions and to Compel Production of Specific Documents is **DENIED IN PART** and **GRANTED IN PART**.


I.      BACKGROUND

Jennifer Saller ("Plaintiff") was employed from 2009 through March 14, 2014, at QVC, Inc., ("Defendant"), most recently in the position of assistant buyer.   (Am. Compl. ¶ 10, ECF No. 2).   Plaintiff reported to Vicki Adams until mid-2013, when she moved to the personal care, health/wellness, and fitness department, where she was supervised by Bernadette Voelker. (Adams Dep. 154:9-15, Pl. Mot. Ex. F, ECF No. 40-6; Voelker Dep. 9:6-24, Pl. Mot. Ex. E. ECF No. 40-6).   On December 7, 2012, December 6, 2013, and April 4, 2014, Plaintiff had surgery on her hands for osteoarthritis.   (Am. Compl. ¶ 11).   According to Plaintiff, she informed her

---

[1]   The Honorable C. Darnell Jones, II referred this motion to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A).   (ECF No. 45).

manager of these surgeries and that she would require medical appointments and therapy thereafter; yet, Defendant failed to inform her of her right to take leave under the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.*, ("FMLA"); offer Plaintiff FMLA leave; or provide Plaintiff with a reasonable accommodation for her disability pursuant to the Americans with Disabilities Act, 42 U.S.C. § 1201, *et seq.*, ("ADA").   (*Id.* ¶¶ 12-14, 18-22).   Plaintiff alleges that, instead, Defendant began to discriminate and retaliate against her for taking what should have been protected FMLA leave and requesting reasonable accommodation, ultimately resulting in the termination of her employment on March 14, 2014.   (*Id.* ¶¶ 15-16).

On August 18, 2014, counsel for Plaintiff sent Defendant a litigation hold letter directing it to preserve all germane electronically stored information ("ESI") in anticipation of Plaintiff filing a civil suit.   (Pl. Mot. Ex. B, ECF No. 40-5).   Approximately eight months later, on April 27, 2015, Plaintiff commenced this civil action, alleging that Defendant interfered with her FMLA rights (Count One); discriminated and retaliated against Plaintiff for exercising rights that should have been protected under the FMLA (Count Two); and discriminated against Plaintiff based on her disability in violation of the ADA (Count Three).   (Am. Compl. ¶¶ 24-43).

On September 16, 2015, Plaintiff served her First Request for Production of Documents upon Defendant.   (Pl. Mot. to Compel Ex. B, ECF No. 23-5).   The following Requests for Production ("RFPs") were included therein:

> **Request No. 11**:   All documents contained in formal and informal personnel files, including but not limited to internal and external performance evaluations, records of discipline, and performance goals, of . . . . (d) Vicki Adams (e) Bernadette Voelker.
>
> **Request No. 38:** All documents that refer, relate to or reflect the performance of products of other assistant buyers from 2011 to 2014.

**Request No. 46**:  All documents that refer or relate to any alleged "cancellation" of the Sprouts program while Ms. Saller was responsible for the Sprouts program.

(*Id.*).   On October 22, 2015, Defendant served objections and responses to Plaintiff's First Request.   (Pl. Mot. to Compel Ex. D, ECF No. 23-5).

On March 1, 2016, Plaintiff filed a Motion to Compel Complete Responses to Interrogatories and Requests for Production of Documents, (Pl. Mot. to Compel, ECF No. 23), which was referred to the undersigned, for disposition, (Order, ECF No. 24).   I scheduled a motion hearing for April 5, 2016; however, the parties instead held an in-person meet-and-confer during which time they were able to resolve the discovery issues raised in Plaintiff's motion to compel.   As a result, the parties drafted an order granting Plaintiff's motion to compel, which I approved and entered on April 7, 2016.   (Apr. 7 Order, ECF No. 34).

The April 7, 2016 discovery order required Defendant to supplement its discovery by April 22, 2016.   (*Id.*).   To reflect the need for ongoing and additional discovery, this Court also entered an Amended Scheduling Order providing for the close of discovery on June 8, 2016.   (Am. Sched. Order, ECF No. 33).   On April 22, 2016, Defendant served Supplemental Objections and Responses to Plaintiff's First Request for Production of Documents.   (Pl. Mot. Ex. C, ECF No. 40-5).   However, notwithstanding its objections, Defendant produced an additional 367 pages of documents.   (Pl. Mot. ¶ 7).

Plaintiff thereafter served a Third Request for Production of Documents, containing, *inter alia*, the following RFP:[2]

---

[2]   Plaintiff has not provided her Third Request for Production to this Court; therefore, the Court cannot be certain as to the date of service.

**Request No. 49:** All documents that refer, relate to or constitute performance reviews for Vicki Adams and Bernadette Voelker, and anyone under their supervision from 2012 to present.

On April 21, 2016, Defendant objected to this request.   (Pl. Mot. Ex. D, ECF No. 40-6). Specifically, Defendant objected that performance reviews of persons supervised by Ms. Voelker and Ms. Adams were not reasonably calculated to lead to the discovery of admissible evidence; however, Defendant stated that it would produce Voelker and Adams' own performance reviews. (*Id.*).

On June 9, 2016, Plaintiff moved for sanctions against Defendant on the basis that its supplemental responses to her First Request for Production violated the Court's April 7, 2016 discovery order.   (Pl. Mot., ECF No. 40).   Plaintiff further moved to compel Defendant to produce documents responsive to Request 49.   (*Id.* ¶ 10).   Defendant has filed a response in opposition to Plaintiff's motion, (Def. Resp., ECF No. 47), and Plaintiff a supplemental memorandum, (Pl. Supp. Mem., ECF No. 48).   The matter is fully briefed and ripe for disposition.

## II.    LEGAL STANDARDS[3]

### A.    Motion to Compel

"It is well established that the scope and conduct of discovery are within the sound discretion of the trial court."   *Marroquin–Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983).

---

[3]   The Court sets forth herein the certain provisions of the Federal Rules of Civil Procedure, which were amended effective December 1, 2015, after the start of this lawsuit. However, on April 29, 2015, the Supreme Court ordered that these amendments would be applicable to all proceedings commenced on or after December 1, 2015, and all proceedings then pending, "insofar as just and practicable."   Order ¶ 2 (U.S. Apr. 29, 2015); see also Fed. R. Civ. P. 86(a)(2) (amended rules govern pending proceedings unless applying them "would be infeasible or work an injustice").   As neither party has suggested otherwise, the Court finds that application of the amended rules is both just and practicable in this case.

4

Pursuant to Federal Rule of Civil Procedure 26(b)(1):

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).   Relevance is generally "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."   *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)).   However, while the scope of discovery pursuant to Rule 26 is broad, it is not unlimited and may be circumscribed, as discovery should not serve as a fishing expedition.   *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 189 (3d Cir. 1999).

Pursuant to Rule 37, a party who has received evasive or incomplete discovery responses may seek a court order compelling disclosure of discovery of the material sought.   Fed. R. Civ. P. 37(a)(1).   The moving party bears the initial burden of showing that the requested discovery is relevant.   *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001).   The burden then shifts to the party opposing discovery to articulate why discovery should be withheld.   *Id.*   The objecting party must then demonstrate in specific terms why a particular discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper.   *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

**B.     Motion for Sanctions**

In the event that a party from whom discovery is sought fails to comply with a court order compelling discovery, Rule 37 of the Federal Rules of Civil Procedure allow for the imposition of

5

sanctions.   The Rule provides:

> If a party . . . fails to obey an order to provide or permit discovery  . . . the court where the action is pending may issue further just orders. They may include the following:
>
>> (i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>>
>> (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>>
>> (iii)   striking pleadings in whole or in part;
>>
>> (iv)    staying further proceedings until the order is obeyed;
>>
>> (v)     dismissing the action or proceeding in whole or in part;
>>
>> (vi)    rendering a default judgment against the disobedient party; or
>>
>> (vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37 (b)(2)(A).

Federal Rule of Civil Procedure 37(e), as revised by the December 1, 2015 amendments,

"specifically addresses the applicability of sanctions for spoliation of [ESI]."   *Accurso v.*

*Infra-Red Servs., Inc.*, 2016 WL 930686, at *3 (E.D. Pa. Mar. 11, 2016).   Pursuant to Rule 37(e),

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>> (2) only upon finding that the party acted with the intent to deprive

6

another party of the information's use in the litigation may:

> (A) presume that the lost information was unfavorable to the
> party;
> (B) instruct the jury that it may or must presume the
> information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

## III.     DISCUSSION

### A.     Motion for Sanctions

Plaintiff moves for discovery sanctions, arguing that Defendant has violated the Court's April 2016 discovery order with respect to RFP 38, RFP 46, and RFP 11.   Defendant argues its responses are complete, inasmuch as the documents requested have been produced or otherwise do not exist; thus, it asserts it has not violated the Court's discovery order, and sanctions are not appropriate.   Each request will be discussed in *seriatim*.   For the reasons set forth below, the Court finds discovery sanctions are not merited.

### 1.     Request 38

Request 38 seeks "documents that refer, relate to, or reflect the performance of products of other assistant buyers from 2011 to 2014."   The Court's April 7, 2016 discovery order required Defendant to supplement its response to this request as follows:

> QVC will supplement its response to Request Nos. 37 and 38 by
> providing, to the extent they exist, the annual or year-end Working
> [Open to Buy] OTB Forecast for products in the Merchandising
> Division of QVC, Inc. (U.S. only) for the years 2012 and 2013 and
> information sufficient to identify the individuals responsible for
> various categories of products.

(Order 4 ¶ (b), ECF No. 34).   Defendant states that in response to this order, it located and

produced spreadsheets showing the OTB projections for 2012, and the actual versus planned numbers for QVC's products in its Merchandising Division in 2013.   (Def. Mem. of Law 7). However, Defendant states that it was not able "to locate information sufficient to identify the individuals responsible for various categories of products in these spreadsheets."   (*Id.*). Defendant explains that this "information is updated and overwritten in QVC's information management systems on a rolling basis as personnel and product assignments change;" therefore, information from 2012 and 2013 no longer exists.   (Def. Resp. ¶ 8).

Plaintiff argues that, contrary to Defendant's assertion and as evidenced by "deposition testimony of QVC witnesses," information sufficient to identify individuals responsible for various categories of products exists in individual performance reviews.   (Pl. Mot. ¶ 9; Pl. Mem. of Law 4).   Insofar as Plaintiff argues that Defendant should have produced performance evaluations as responsive to RFP 38, and should be subject to discovery sanctions for its failure to do so, this argument is unpersuasive.   Plaintiff's argument relies on a mischaracterization of Ms. Voelker's deposition testimony.   Ms. Voelker testified that the OTB forecasts were used on a monthly basis to project sales and inventories for departmental head buyers, such as herself, but that she was "not sure" if Defendant maintained other documents which broke down the performance of products by individual assistant buyers.   (Voelker Dep. 184:1-185:7, ECF No. 40-6).   With regard to performance evaluations, she explained that that Defendant had a system called Microstrategy that she could use to reflect the performance of each category of products for which her assistant buyers were responsible to write performance evaluations; however, as far as she knew, Microstrategy did not retain historical information, and hard copies of the individual-level data from Microstrategy were not generated or kept.   (*Id.* at 184:21-187:17).

8

Ms. Voelker testified that the evaluations themselves would reflect whether an individual hit his or her sales goals.   (*Id.* at 187:24-188:6).   Thus, contrary to Plaintiff's assertion, Ms. Voelker's deposition testimony does not reveal that individual performance evaluations "identify the individuals responsible for various categories of products" such that these documents would have been responsive to RFP 38.   Moreover, Plaintiff specifically requested performance evaluations in RFP 49, which was part of her Third Request for Production of Documents.   The Court's April 7, 2016 discovery order pertained only to her First Request for Production of Documents, and therefore did not contemplate or address documents in RFP 49.   Since Plaintiff has not obtained an order compelling Defendant to produce documents responsive to RFP 49, Rule 37 discovery sanctions are not appropriate.[4]

Plaintiff additionally suggests in passing that Defendant's failure to uncover documents identifying individuals responsible for categories of products is the result of its failure to preserve documents in accordance with her litigation hold letter of August 18, 2014, which directed Defendant to modify or suspend features of its information systems that would operate to cause the loss of potentially relevant ESI.   (Pl. Mem. of Law 4 ¶ (c), 5).   Plaintiff does not assert that spoliation sanctions are merited, or even allude to Federal Rule 37(e), but to the extent she insinuates that responsive information was "lost" because of Defendant's failure to take reasonable steps to preserve evidence, the Court does not agree.   Defendant has explained that documents identifying individuals in charge of various categories of products would be dynamically overwritten; therefore, it is far from certain that at the time Plaintiff sent the litigation

---

[4]   Insofar as Plaintiff now contends that Defendant should be compelled to produce the performance reviews requested in RFP 49, the Court addresses this argument in subsection C, *infra*.

hold letter in August 2014, this information from 2012 and 2013 still existed.   The Court accepts QVC's representation that it initiated a litigation hold notice on August 20, 2014, and to its knowledge, no documents or information were deleted or destroyed thereafter.   (Def. Resp. ¶ 3).

Accordingly, the Court declines to order sanctions for Defendant's failure to produce documents responsive to RFP 38.

### 2.   Request 46

In RFP 46, Plaintiff sought "all documents that refer or relate to any alleged 'cancellation' of the Sprouts program while [Plaintiff] was responsible for the Sprouts Program."[5]   (Pl. Mot. ¶ 11).   The Court's April 7, 2016 discovery order required Defendant to "supplement its response to Request No. 46 to the extent that responsive documents exist and have not previously been produced."   (Order 4 ¶ (e), ECF No. 34).

Plaintiff argues that Defendant has failed to produce the following responsive documents: a Sprouts spreadsheet referred to in Ms. Voelker's deposition, which was maintained by Ms. Voelker's group and located on a shared directory; another Sprouts-related spreadsheet referenced in produced emails; and all biweekly emails from August 13, 2013 through March 13, 2014, showing voting for products in the Sprouts program.   (Pl. Mot. ¶¶ 11-12).   As a discovery sanction, Plaintiff requests that the Court deem as a conclusive matter of fact that the Sprouts program was not cancelled or suspended while it was Ms. Saller's responsibility.   (*Id.* ¶ 13).

---

[5]   The Sprouts Program was a biweekly competition in which customers could vote on the QVC website for their favorite product from one of three entrepreneurs, which would then be sold through QVC.   (Pl. Mem. of Law 2; Def. Resp. 11-12).   Ms. Voelker testified that one of the reasons for Plaintiff's termination was that Plaintiff failed to find enough products for two biweekly voting periods in late 2013.   (Voelker Dep. 37:16-20, 55:19-56:7, ECF Nos. 40-6, 48-1).   Plaintiff contests this, and testified in her deposition that the Sprouts program was not cancelled in 2013 due to her failure to obtain enough products, and that was "never cancelled" when she managed it.   (Saller Dep. 268:3-12, ECF No. 48-2).

Plaintiff also requests that the Court inform the jury of Defendant's failure to produce responsive documents and award Plaintiff reasonable attorney's fees in obtaining this order.   (*Id.*).

Discovery sanctions for failure to comply with the Court's order regarding RFP 46 are not merited.   As noted above, RFP 46, and the resulting discovery order, required Defendant to perform additional searches to locate documents pertaining to the *cancellation* of the Sprouts Program.   Defendant complied with the Court's order because it searched for any documents that had the words "Jennifer" or "Saller" or "Jen" or "JS" and "cancel" and "Sprouts" during the relevant time period and produced all documents located.   (Def. Mem. of Law 11-12).   In light of Ms. Voelker's testimony, it is unsurprising that this search did not yield the spreadsheets and emails cited by Plaintiff.   Ms. Voelker testified that the Sprouts Program was not cancelled, but rather was suspended, put on break, or taken down from the QVC website, first at some point before the program was assigned to Plaintiff, and again during the 2013 holiday season, when the program was under Plaintiff's management.   (Voelker Dep. 37:13-20, 52:22-53:8, 54:2-4, 56:5-7, 59:9-60:7).   Following Ms. Voelker's deposition, there is no indication that Plaintiff propounded additional discovery requests for documents that referred or related to the decision to suspend, modify, or put the Sprouts Program on hiatus, or for documents reflecting Sprouts voting, overall. Defendant's additional search based on Plaintiff's own terminology — the cancellation of the Sprouts Program — satisfies the Court's April 2016 order.

In any event, Defendant went beyond the requirements of the Court's order when it also searched for Jennifer" or "Saller" or "Jen" or "JS" and "vote" with no date restriction.   (Def. Mem. of Law 12).   On June 23, 2016, Defendant's counsel received for the first time a two-page email chain between Plaintiff and Ms. Voelker in early January 2014 addressing voting issues in

the Sprouts program over the 2013 holiday season, which it immediately produced to Plaintiff.[6]
(Def. Resp. 2 n.2; *Id.* Ex. B).   This email demonstrates that Plaintiff remained in charge of Sprouts
after the 2013 holiday season, though Ms. Voelker expressed concern that Plaintiff had not found
enough products for voting for the previous two biweekly periods.   (Def. Resp. Ex. B).   Thus,
Plaintiff has received evidence corroborating her deposition testimony that the Sprouts program
was not cancelled.

Therefore, because Defendant has complied with the Court's April 2016 discovery order,
discovery sanctions for RFP 46 are not merited.

### 3.      Request 11

Lastly, Plaintiff seeks discovery sanctions for Defendant's alleged failure to comply with
the Court's order regarding RFP 11, which requests "all documents contained in formal and
informal personnel files, including but not limited to internal and external performance
evaluations, records of discipline, and performance goals, of . . . . (d) Vicki Adams (e) Bernadette
Voelker."   The Court's April 2016 discovery order stated:

> QVC will supplement its response to Request No. 11 by
> supplementing its production of the personnel files of Vicki Adams
> and Bernadette Voelker to include all records of discipline and
> performance evaluations to the extent that QVC has them on file,
> and by producing the personnel files of employees or former
> employees within the Merchandising Division of QVC, Inc. (U.S.
> only) who requested FMLA leave or an ADA accommodation and
> were terminated by QVC within two (2) years of the request.

(Order ¶ 2(b), ECF No. 34).   Plaintiff argues that Defendant is in violation of the court's order
because it has failed to produce personnel files for Ms. Adams and Ms. Voelker for the year 2014.

---

[6]   In light of this late production, Defendant states it will allow Ms. Voelker to be
redeposed on the subject matter contained within that document.   Plaintiff has no apparent
objection.

(Pl. Mot. ¶ 14).   Plaintiff requests that the Court order Defendant to produce these performance reviews within ten days, but Defendant states that it has already done so (Def. Resp. 1 n.1), and Plaintiff takes no issue with this is in her supplemental memorandum.   Therefore, Plaintiff's request for sanctions with regard to RFP 11 is moot.

### B.      Motion to Compel

In addition to moving for sanctions, Plaintiff moves to compel Defendant to produce documents responsive to RFP 49 from Plaintiff's Third Request for Production of Documents.   In relevant part, RFP 49 requests "all documents that refer, relate to or constitute performance reviews for individuals under the supervision" of Ms. Adams or Ms. Voelker from 2012 to the present.   (Pl. Mot. ¶ 10).

Plaintiff identifies Alison Durant, Erin McGeon, and Christine DeMaio as the employees who reported to Ms. Adams in 2012 and 2013, and Brandy Cost, Jennifer Kupstas, Erin Rucci, and Megan Keller as the individuals who reported to Ms. Voelker in 2013.   (Pl. Mem. of Law 7).   She argues that the performance reviews of these seven employees are relevant to show that Defendant's articulated reasons for her termination were pretextual.[7]   (Pl. Mem. of Law 6-7).

---

[7]   The FMLA's implementing regulations proscribe retaliation for the exercise or attempted exercise of FMLA rights.   *See* 29 C.F.R. § 825.220(c); *Conoshenti v. Pub. Serv. Elec. & Gas Co*., 364 F.3d 135, 146 n.9 (3d Cir. 2000).   To establish a *prima facie* FMLA retaliation-for-exercise claim, a plaintiff must prove that: (1) she invoked the right to FMLA-qualifying leave; (2) she suffered adverse employment action; and (3) the adverse employment action was "causally related to" her exercise of FMLA rights.   *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr*., 691 F.3d 294, 301-02 (3d Cir. 2012).   Where an FMLA retaliation-for-exercise claim is based on circumstantial evidence, the plaintiff must establish the elements of a *prima facie* case of retaliation; then, the burden of production shifts to defendant to demonstrate a "legitimate, nondiscriminatory reason" for the adverse employment action.   *See id.* If the defendant meets this "minimal burden," the plaintiff must point to record evidence suggesting that defendant's reasons for the adverse action are pretextual.   *Id.* at 302.

13

Defendant responds that the performance reviews are irrelevant because Plaintiff is not similarly situated to any of these other employees.   (Def. Resp. 4).   Specifically, Defendant points out that, unlike Plaintiff, none of the identified individuals had received warnings for insubordination or other improper conduct, and none were rated "2," indicating "below expectations," on their performance evaluations in 2012 or 2013.[8]   (Def. Mem of Law 3-4).   In response, Plaintiff argues that the evaluations should show that at least one person, Jennifer Kupstas, received a "3" rating in 2013, despite not meeting her sales goals.   (Pl. Supp. Mem. 3).

Ordinarily, discovery of personnel records is permissible only for parties or for "similarly situated" employees.  *See Chiaradonna v. Rosemont Coll*., No. 06–1015, 2006 WL 374277, at *2 (E.D. Pa. Dec. 11, 2006).   The Third Circuit has not expressly defined the term "similarly situated" in the employment context; however, "it has accepted the standard used by other circuits that to be considered similarly situated, comparator employees must be similarly situated in all relevant respects."  *Provine v. Ambulatory Health Servs., Inc*., No. 4:13-CV-0334, 2014 WL 47771, at *3 (M.D. Pa. Jan. 6, 2014) (citing *Wilcher v. Postmaster General*, 441 F. App'x 879, 882, 2011 WL 3468322, at *2 (3d Cir. 2011) (not precedential)).   "[W]hether a factor is relevant for purposes of a similarly situated analysis must be determined by the context of each case." *Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009).   "In disciplinary cases or in the context of personnel actions . . . the relevant factors often include a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their

---

[8]   To support its contention that none of the other employees supervised by Ms. Adams and/or Ms. Voelker are comparators to Plaintiff, Defendant provides an affidavit from its human resources director, Erica Smith.   (Def. Resp. Ex. C, ECF No. 47-5).

conduct or the employer's treatment of them.'"   *Id*. (quoting *Radue v. Kimberly–Clark Corp*., 219

F.3d 612, 617-18 (7th Cir. 2000)) (citing *Johnson v. Kroger Co*., 319 F.3d 858, 867 (6th Cir. 2003)

("In the context of personnel actions, the relevant factors for determining whether employees are

similarly situated often include the employees' supervisors, the standards that the employees had

to meet, and the employees' conduct.")).

Considering the context of this case, the Court finds the requested performance reviews are

potentially relevant to showing that Defendant's stated reasons for Plaintiff's termination are

pretextual.   Defendant claims that Plaintiff was "terminated for her poor performance at QVC and

inability to adequately perform her job."   (Def. Mem. of Law 5).   To demonstrate pretext,

Plaintiff wishes to compare herself to other assistant buyers who worked for the same managers as

she did in 2012 and 2013, the years in which she received the "below expectations" rating.   If

other assistant buyers supervised by Ms. Adams or Ms. Voelker had performance deficiencies

similar to her own, but did not receive equivalently low ratings, Plaintiff argues she may be able to

demonstrate that she was not terminated due to poor performance, but because she alone took

qualifying FMLA leave.   I agree.   Defendant's argument — that Plaintiff is different than these

employees because of his disciplinary record — is not persuasive, since it does not argue that she

was terminated for disciplinary issues, but rather for poor job performance.   Therefore, Plaintiff

has shown that the performance reviews of employees who dealt with the same supervisors, were

subject to the same standards, and who may have had similar performance deficiencies to her own,

are relevant to the claims or defenses in this case.   *See Chiaradonna,* 2006 WL 3742777, at *2

(limiting discovery in wrongful termination case to personnel files of similarly situated

employees); *Kanaji v. Phila. Child Guidance Center of Children's Hosp.,* No. 00–937, 2001 WL

708898, at *3 (E.D. Pa. June 20, 2001) (same); *Northern v. City of Phila.,* No. 98-6517, 2000 WL 355526, at *3 (E.D. Pa. April 4, 2000) (same).

However, the Court finds that Plaintiff's document request must be narrowed.   Plaintiff requests the performance reviews of seven employees who reported to the same supervisors at the same time as Plaintiff, regardless of whether those employees' reviews reflect deficiencies in performance that allegedly contributed to Plaintiff's "below expectations" rating.   The Court finds that only those employees whose reviews reflect deficiencies in performance similar to those that allegedly contributed to Plaintiff's "below expectations" rating could be considered similarly situated to Plaintiff.[9]   *See Apollo v. Pa. Convention Ctr. Auth.*, No. 11–6684, 2013 WL 6795978 (E.D.Pa. Dec. 23, 2013) ("[D]iscovery of personnel files must be limited to documents relevant to the plaintiff's claims because of the confidential information within these files."); *see also Abreu v. State of New Jersey*, No. CV 14-716, 2015 WL 9480021, at *7 (D.N.J. Dec. 29, 2015) (granting motion to compel production of disciplinary records, promotion records, and performance reviews, but not entire personnel file, subject to protective order).   Therefore, to the extent they exist and are in Defendant's possession or control, Defendant shall produce the 2012 and 2013 performance reviews of Alison Durant, Erin McGeon, and Christine DeMaio, and the 2013 evaluations of Brandy Cost, Jennifer Kupstas, Erin Rucci, and Megan Keller, but only to the extent that any of these performance reviews reflect unmet sales goals or poor performance issues similar to those attributed to Plaintiff by the Defendant.[10]   Any performance reviews that are produced in

---

[9]   Plaintiff has identified only one co-worker, Jennifer Kupstas, who failed to meet her sales goals in 2013 but did not receive a rating of "2."   While Defendant may ultimately be able to distinguish Kupstas from Plaintiff, such a determination is premature at this point.
[10]   As noted, *infra*, Defendant provides an affidavit from its Human Resource Director stating that none of the identified individuals were "written up" for poor performance,

response to RFP 49 shall be subject to the confidentiality order in effect in this case.   (Stip. and

Order, ECF No. 15).   An appropriate order follows.


IV.     **CONCLUSION**

For the reasons stated above, Plaintiff's motion for sanctions based on allegedly deficient

responses to RFPs 38, 46, and 11, is denied.   Plaintiff's motion to compel Defendant to respond to

RFP 49 is granted in part as explained herein.

BY THE COURT:


  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE

---

insubordination, or other improper conduct.   (Smith Decl. ¶¶ 4, 5, ECF No. 47-5).   The Court
accepts this affidavit.   However, even if none of the identified individuals received a "written
warning" for poor performance, this is not equivalent to attesting that none of these employees had
unmet sales goals or other deficiencies in performance in their annual reviews, similar to those
attributed to Plaintiff.