| | | |
|---|---|---|
| **JENNIFER SALLER,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 15-2279** |
| | : | |
| **QVC, Inc.,** | : | |
| **Defendant.** | : | |

**Jones, II     J.**

September 29, 2017

**MEMORANDUM**

Plaintiff Jennifer Saller worked as an Assistant Buyer for Defendant QVC, Inc. for over two years. While employed by Defendant, Plaintiff was diagnosed with Stage IV arthritis in her left hand and Stage III arthritis in her right. Plaintiff underwent surgery in 2012 and 2013 to treat her condition, and attended physical therapy regularly to manage her pain – all while working as Defendant's employee. Plaintiff was never advised that her absences might be protected under the Family Medical Leave Act of 1993. In March of 2014, Plaintiff was terminated after submitting a request for leave to undergo a third surgery. As a result thereof, Plaintiff commenced the instant action, alleging numerous violations of the Family Medical Leave Act of 1993 ("FMLA") and Title I of the Americans with Disabilities Act ("ADA"). Defendant argues that Plaintiff was terminated for insubordination and poor performance, all of which is documented in performance evaluations and memoranda to Plaintiff's employee file. Plaintiff contends that her record of employee infractions and deficient performance was fabricated to disguise Defendant's discriminatory animus. Plaintiff seeks summary judgment on her FMLA claim for interference with rights and Defendant seeks summary judgment on all of Plaintiff's claims. For the reasons that follow, this Court denies Plaintiff's Partial Motion for Summary Judgment in its entirety and grants in part and denies in part Defendant's Motion for Summary Judgment.

## FACTUAL BACKGROUND[1]

Jennifer Saller ("Plaintiff") was employed by QVC, Inc. ("Defendant") from June of 2009 through March 14, 2014. (ECF No. 58-2, ¶ 1; ECF No. 59-2, ¶ 1). Plaintiff was initially hired as an intern, was promoted to Merchandising Trainee in May of 2010, and worked as an Assistant Buyer from July of 2011 until her termination in March of 2014. (ECF No. 58-2, ¶ 2; ECF No. 59-2, ¶ 2). Plaintiff worked as an at will employee in each of these positions. (ECF No. 59-2, ¶ 3).

The factual record in this case is extensive. The Court therefore organizes the following facts in chronological order and only recites that which was necessary to reach the legal conclusions contained in the discussion section below.

I.      2012 Calendar Year

At some point in early 2012, Vicki Adams ("Adams") – Plaintiff's direct supervisor at the time – prepared a formal performance evaluation, assessing the extent to which Plaintiff met expectations across different professional measures during her then short tenure as Assistant Buyer. (ECF No. 63-8, Ex. 34). The evaluation covered Plaintiff's performance from July 11, 2011 through December 31, 2011. (ECF No. 63-8, Ex. 34). Overall, Plaintiff was rated a three on a scale of one (lowest) to five (highest), and was deemed a "solid performer." (ECF No. 63-8, Ex. 34).

On February 8, 2012, Daphne Howard – one of Defendant's business associates – forwarded to Plaintiff an email request from a vendor seeking to amend a previously submitted purchase order. (ECF No. 59-11). Plaintiff asked about the specifications of the sought amendment, and Howard directed Plaintiff to the bottom of the forwarded email, where the vendor delineated the changes she wanted. (ECF No. 59-11). In response, Plaintiff said "[d]o you really think I have time to scroll all the way to the bottom," and advised Howard that the requested change "[was] not well received." (ECF No. 59-11). In

---

[1] For the sake of brevity, the Court will only cite to the parties' Statements of Undisputed Material Facts (ECF Nos. 58-2 and 59-2) where the stated fact is deemed admitted by the opposing party.

the email correspondence that followed, Plaintiff referred to Howard's emails as "very poorly and hastily worded," and described Howard's efforts, and presumably that of the vendor, as "about as sloppy as [Plaintiff] ha[d] seen." (ECF No. 59-11). Plaintiff further stated that "[i]f [Plaintiff] were malicious – [the purchase order] would have been canceled a few weeks [prior]." (ECF No. 59-11). Defendant's vendor was copied on the above-described emails. (ECF No. 59-11). Howard forwarded the email exchange to Adams, who brought Plaintiff's actions to the attention of Defendant's Human Resource Partner, Heather Vineis, several months later. (ECF No. 59-11).

On March 6, 2012, Plaintiff received a parking violation in the lot of Defendant's building following a brief, but contentious exchange with one of Defendant's security personnel. (ECF No. 59-9; ECF No. 59-10, p. 288:10-289:2). The incident report prepared by the security guard involved described Plaintiff as being uncooperative and condescending. (ECF No. 59-9). The guard's supervisor sent the incident report to Adams via office email, who then forwarded the incident report on to her direct supervisor, Karl Schroeder ("Schroeder"). (ECF No. 59-9).

On July 25, 2012, Plaintiff was placed on a ninety-day Performance Improvement Plan ("PIP"). (ECF No. 58-2, ¶ 96; ECF No. 59-2 ¶ 11). The PIP noticed Plaintiff that she was performing below expectations and that the document outlined deficiencies in Plaintiff's performance of which Plaintiff was previously made aware. (ECF No. 59-12, p. 1). The PIP cautioned Plaintiff that a failure to improve in the noted areas could result in further corrective action, including termination. (ECF No. 59-12, p. 4). Plaintiff refused to sign the PIP. (ECF No. 59-2, ¶ 20). On August 28, 2012, Defendant withdrew the PIP. (ECF No. 58-2, ¶ 98; ECF No. 59-2, ¶ 20).

At some point in the fall of 2012, Plaintiff was diagnosed with Stage IV arthritis in her left hand and Stage III arthritis in her right hand. (ECF No. 58-2, ¶13; ECF No. 58-6, Ex. M).

On November 26, 2012, Adams received an email notification from Defendant's online Human Resource portal, indicating that Plaintiff requested four days off. (ECF No. 58-7, Ex. O; ECF No. 59-24). When Adams became aware that Plaintiff needed the time off for hand surgery, Adams instructed Plaintiff to take as much time as she needed. (ECF No. 58-2, ¶ 29). Adams did not inquire further, did not provide Plaintiff with any information related to the FMLA, and did not forward Plaintiff's leave request to any other of Defendant's managerial staff. (ECF No. 58-2, ¶ 30-35).

On December 7, 2012, Plaintiff had surgery on her left hand. (ECF No. 58-6, Ex. M). As of the time of the surgery, Plaintiff was eligible for FMLA leave. (ECF No. 58-2, ¶ 10). Plaintiff returned to work on December 12, 2012. (ECF No. 58-2, ¶ 16).

Defendant did not adjust Plaintiff's performance goals or workload for the 2012 calendar year. (ECF No. 58-2, ¶ 132-133).

II.    2013 Calendar Year

At some point in early 2013, Adams prepared Plaintiff's 2012 performance evaluation. (ECF No. 59-14). For 2012, Plaintiff's overall rating was a two, and Plaintiff was designated a "low performer – plus." (ECF No. 59-14).

On April 25, 2013, Adams scheduled a team meeting to discuss products for which Plaintiff was partly responsible. (ECF No. 58-2, ¶ 44; ECF No. 58-7, Ex. N). The meeting – scheduled for 4:00 p.m. that day – conflicted with an appointment Plaintiff had scheduled, and Plaintiff requested that the meeting be moved to accommodate Plaintiff's availability. (ECF No. 58-2, ¶ 47). Adams responded as follows:

> I'm sorry but no. I've tried to be very understanding and supportive of your schedule. I understand that you do arrive earlier in the morning, but leave between 4 and 4:30 several times a week and [have] been taking huge chunks of time out of the office during the day for appointments. I understand that you have put a lot of time and effort into these [products]

> and I would much prefer to have you in the meeting but I will not delay
> business meetings/discussions because you have to leave early.

(ECF No. 58-2, ¶ 49; ECF No. 58-7, Ex. N). The meeting occurred as planned, in Plaintiff's absence. (ECF No. 58-2, ¶ 49).

On that same day, Adams also met with Plaintiff and Stacey Gill ("Gill") – Defendant's Human Resource Business Partner – to administer a coaching plan to Plaintiff and explain the terms and conditions thereof. (ECF No. 58-2, ¶ 50; ECF No. 59-2, ¶ 32). The coaching plan addressed perceived deficiencies in Plaintiff's performance in the areas of communication, self-management, professional drive, and achievement of business goals. (ECF No. 58-7, Ex. P). During the meeting, Adams made specific reference to her concerns about the effect of Plaintiff's time out of the office on Plaintiff's ability to communicate with vendors in a timely fashion. (ECF No. 58-2, ¶ 51).

The next day, Adams sent Gill an email, attaching a calendar grid that purported to reflect the dates on which Plaintiff was out of the office in 2013. (ECF No. 58-2, ¶ 53; ECF No. 58-7, Ex. R). The dates were color coordinated according to the reported reason for Plaintiff's absence and how long Plaintiff was out of the office. (ECF No. 58-7, Ex. R). According to Adams's grid, Plaintiff took time out of the office on forty nine occasions between January 3, 2013 and April 25, 2013, twenty six of which were reportedly for physical therapy appointments related to Plaintiff's arthritis. (ECF No. 58-7, Ex. R). Adams stated in the email that she wanted to provide Gill with "a clear picture of a deviance of standard work hours as well as how little time [Plaintiff] spent in the office to recoup for the days where [Plaintiff] left or came in late." (ECF No. 58-2, ¶ 54; ECF No. 58-7, Ex. R).

On August 13, 2013, Plaintiff was transferred to a new supervisor, Bernadette Voelker ("Voelker"). (ECF No. 58-2, ¶ 56; ECF No. 59-2, ¶ 43). Sometime in October of 2013, Plaintiff notified Voelker that she would need time off in December of 2013 for another hand surgery and to recover thereafter. (ECF No. 58-2, ¶ 57). In response, Voelker told Plaintiff to take as much time as she needed.

(ECF No. 58-2, ¶ 57). Voelker did not advise Plaintiff of Defendant's FMLA policy and did not discuss Plaintiff's request for time off with anyone else. (ECF No. 58-2, ¶ 58-63). Plaintiff ultimately requested – and was granted – four days off from work, December 6, 9, 10, and 11, 2013. (ECF No. 59-2, ¶ 67). Plaintiff underwent surgery on her right hand on December 6, 2013. (ECF No. 58-6, Ex. M).

Defendant did not adjust Plaintiff's performance goals or workload for the 2013 work year. (ECF No. 58-2, ¶ 134).

III. <u>2014 Calendar Year</u>

On January 3, 2014, Voelker sent Plaintiff an email in which Voelker expressed her discontent with Plaintiff's work on a QVC program. (ECF No. 59-17). Voelker stated that the program was in an unacceptable state and instructed Plaintiff to "either work more efficiently or work until [Plaintiff] [got] the job done." (ECF No. 59-17).

On January 16, 2014 – before Voelker prepared Plaintiff's 2013 performance evaluation – Gill emailed Defendant's executives Erica Smith and Heather Stover, enclosing a document entitled "Talent Profile Summary Data." (ECF No. 58-7, Ex. T). In the enclosed profile, Plaintiff's performance for the 2013 calendar year was rated a three on a scale of one to five, and Plaintiff was designated a solid performer. (ECF No. 58-7, Ex. T). A calibration meeting was held the next day, during which Defendant's supervisory staff met to discuss the performance of their respective teams. (ECF No. 58-2, ¶ 74).

At some point thereafter, Voelker prepared Plaintiff's 2013 performance evaluation, which assessed Plaintiff's performance from January 1, 2013 until December 31, 2013. (ECF No. 59-20). Despite the contents of the Talent Profile, for 2013, Plaintiff received an overall rating of two on a scale of one to five, and was designated a "low performer with potential." (ECF No. 59-20).

On February 13, 2014, Voelker received an email notification from Defendant's Human Resource portal indicating that Plaintiff requested time off on April 4, 7, 8, and 9, 2014. (ECF No. 58-7, Ex. S). Following this request Voelker did not advise Plaintiff of her FMLA rights, nor did Voelker discuss Plaintiff's request for time off with anyone else. (ECF No. 58-2, ¶ 68-70).

On February 27, 2014, Voelker prepared and filed a formal memorandum in which she detailed alleged unprofessional behavior by Plaintiff. (ECF No. 59-2 ¶ 50; ECF No. 59-19). According to the memorandum, when confronted with feedback about her lack of preparedness in an important meeting, Plaintiff became "angry," "loud," and "aggressive." (ECF No. 59-19). Voelker alleged that Plaintiff exhibited the same unprofessional behavior days later. (ECF No. 59-19). The memorandum was recorded in Plaintiff's employee file and a copy was sent to Schroeder. (ECF No. 59-19).

Discussions surrounding Plaintiff's termination began in late February or early March of 2014. (ECF No. 58-2, ¶ 137-138). Plaintiff was terminated on March 13, 2014, and as a result thereof, Plaintiff's medical coverage was terminated on March 31, 2014. (ECF No. 58-2, ¶ 139-140). Plaintiff underwent surgery on her left hand on April 4, 2014. (ECF No. 58-6, Ex. M).

Following Plaintiff's termination, Plaintiff's position was assumed by Defendant's employee, Erin Rucci. (ECF No. 61, ¶ 2). Rucci has never reported to Defendant that she has a disability, nor has Rucci ever requested an accommodation or leave of absence related to an illness or disability. (ECF No. 61, ¶ 3). As it relates to the case at bar, Rucci is not a member of a protected class on the basis of disability. (ECF No. 61, ¶ 4).

Plaintiff never contacted Defendant's Human Resource Department to request FMLA leave for any of her three surgeries. (ECF No. 59-2, ¶70). Plaintiff's arthritis did not render her unable to type or otherwise perform her essential job functions. (ECF No. 59-2, ¶ 73-74).

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." <u>Santini v. Fuentes</u>, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted). Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. "At the summary judgment stage of proceedings, courts do not 'weigh the evidence or make credibility determinations,' but, instead, leave that task to the fact-finder at a later trial if the court denies summary judgment." <u>Halsey v. Pfeiffer</u>, 750 F.3d 273 (3d Cir. 2014) (quoting <u>Petruzzi's IGA Supermarkets v. Darling-Delaware Co.</u>, 998 F.2d 1224, 1230 (3d Cir. 1993)).

**DISCUSSION**

Plaintiff's claims for interference and retaliation arise under the FMLA, and Plaintiff's claim for discrimination arises under the ADA. Defendant moves for summary judgment on each of Plaintiff's claims, arguing that Plaintiff fails to present "a scintilla of evidence that [Defendant] violated" either Act. (ECF No. 59, p. 1). Plaintiff moves for partial summary judgment on her interference claim and claim for liquidated damages. The Court considers each party's Motion and all responses and replies

8

thereto, herein. For the reasons that follow, this Court denies Plaintiff's Partial Motion for Summary Judgment in its entirety, and grants in part and denies in part Defendant's Motion for Summary Judgment.

I.    **Interference with Rights under the Family Medical Leave Act (Count I)**

The FMLA provides, in relevant part, that eligible employees are entitled to twelve workweeks of leave during any twelve-month period where the employee's own serious health condition so necessitates. Ross v. Gilhuly, 755 F.3d 185, 191 (3d Cir. 2014) (citing to 29 U.S.C. § 2612(a)(1)). The FMLA further provides that upon return from leave, an employee is entitled to full reinstatement to the same or equivalent position, benefits, and working conditions as he or she previously held. Id. (citing to 29 U.S.C. § 2614(a)). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act. 29 U.S.C. § 2615(a)(1). This provision is "generally, if imperfectly" referred to as the "interference" provision, Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301 (3d Cir. 2012), and a claim arising from an alleged violation of § 2615(a) is referred to as an "interference claim." Hayduk v. City of Johnstown, 386 F. App'x 55, 59 (3d Cir. 2010). To establish an interference claim, the plaintiff must demonstrate: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA. Ross, 755 F.3d at 191-192.

In Count I of the Amended Complaint, Plaintiff alleges that Defendant willfully and unlawfully interfered with Plaintiff's rights under the FMLA, the result of which was a substantial loss of wages and employment benefits. (ECF No. 2, ¶ 26-27). For the purposes of the instant Motions, Defendant does not dispute the sufficiency of the evidence to establish the first three prongs of the interference standard, namely that Plaintiff was an eligible employee under the FMLA, Defendant was an employer

subject to the FMLA's requirements, and Plaintiff was entitled to FMLA leave. (ECF No. 60-1, p. 11). Defendant only disputes the sufficiency of the evidence to prove Plaintiff provided adequate notice of her intention to take FMLA-qualifying leave and to prove Plaintiff was denied benefits to which she was entitled under the FMLA.  (ECF No. 60-1, p. 11).

Plaintiff's interference claim is premised on four distinct theories of liability: (1) Defendant failed to notify Plaintiff of her eligibility, rights, and responsibilities under the FMLA; (2) Defendant failed to designate Plaintiff's time off as FMLA-qualifying leave; (3) Defendant failed to adjust Plaintiff's workload and performance expectations in accordance with Plaintiff's medical needs; and (4) Defendant terminated Plaintiff after Plaintiff requested, but before Plaintiff could take, leave for a third surgery. (ECF No. 58, p. 23). Both parties move for summary judgment on this claim. In the sections that follow, the Court considers each theory of liability, and the evidence in support thereof, in turn.

A. Failure to Notice and Failure to Designate

To the extent that Plaintiff's interference claim is based either on a failure to notice theory of liability, or a failure to designate theory of liability, summary judgment is granted in favor of Defendant. The FMLA requires employers to advise qualifying employees of their rights and responsibilities under the statute, and to designate employees' qualifying absences as FMLA leave. 29 C.F.R. §§ 825.300(c), 825.301(a). A failure to so notify or to so designate can be actionable as unlawful interference. 29 C.F.R. §§ 825.300(e), 825.301(e). But it is well established that the FMLA does not provide relief "unless the employee has been prejudiced by the violation." Lupyan v. Corinthian Colls., Inc., 761 F.3d 314, 318 (3d Cir. 2014) (internal quotations and citations omitted). To establish prejudice, Plaintiff would have to demonstrate that Defendant's violations "rendered her unable to exercise the right to leave in a meaningful way, thereby causing injury." Id. at 318-319.

After careful and comprehensive review of the record, this Court finds that Plaintiff cannot demonstrate any injury resulting from Defendant's alleged violations. Despite Defendant's arguable failures as it relates to the FMLA notice and designation requirements, Plaintiff took time off in both 2012 and 2013 for her surgeries and subsequent recovery periods, and was fully restored to her previously held position upon return therefrom each time. Plaintiff's near weekly requests for time out of the office for physical therapy appointments were all approved, and Plaintiff was permitted to work a modified schedule whereby Plaintiff could come into work early on the days she had to leave for appointments. Nothing in the record suggests that Plaintiff would have requested – or been entitled to – any benefits beyond that which Defendant provided had Plaintiff known that her condition was FMLA-qualifying or had Defendant designated Plaintiff's leave as arising under the FMLA. Because Plaintiff cannot show that she was in any way prejudiced by Defendant's failure to notify or failure to designate, any interference claim based thereon is untenable as a matter of law. Based on this theory of liability, summary judgment is granted in favor of Defendant on this claim.

B. Failure to Adjust Workload and Performance Goals

To the extent that Plaintiff's interference claim is based on Defendant's failure to adjust Plaintiff's workload and performance expectations, summary judgment is granted in favor of Defendant. The Third Circuit "[has] made it plain that, for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." Ross 755 F.3d at 192. Inherent in such a showing would be proof that the benefit withheld is one to which Plaintiff was actually entitled under the FMLA. Plaintiff fails to establish how Defendant's failure to adjust its expectations of Plaintiff's productivity "interfere[ed] with, restrain[ed], or otherwise deni[ed]" Plaintiff's exercise of her right to protected leave or her right to full reinstatement following FMLA-qualifying leave.

Plaintiff's reliance on Lewis v. Sch. Dist. #70, 523 F.3d 730 (7th Cir. 2008) is inapposite, here. In Lewis, the Court found a genuine issue of material fact as to whether the termination of a bookkeeper

exercising her FMLA right to intermittent leave was based on poor performance and unrelated to the bookkeeper's protected absences. 523 F.3d 730, 743 (7th Cir. 2008). In assessing the evidence adduced in support of the plaintiff's *retaliation* claim, the court in Lewis found that a reasonable jury could construe the defendant's unrealistic expectations for the plaintiff's work product and efficiency as evidence of retaliatory intent. Id. As the case addressed evidence from which a jury could infer retaliatory animus, the holding in Lewis has no bearing on the issue presently before this Court – whether the FMLA entitles qualifying employees to adjustments in workload or performance goals.

Where this issue has been considered, courts found – as this Court finds – an absence of any decision or regulation holding that the FMLA mandates an adjustment in an employee's workload where said employee takes FMLA-qualifying leave – intermittent or otherwise. See Kumar v. UPMC Physician Servs., No. 04-1239, 2006 U.S. Dist. LEXIS 44050 (W.D. Pa. June 28, 2006) ("Plaintiff cites to no decision in support of her argument that a claim under the FMLA exists because common sense tells the employer that when an employee takes leave or a reduced work schedule and thus works fewer hours per week, the employee's workload should be adjusted."); see also, Cheeks v. General Dynamics, No. 12-1543, 2015 U.S. Dist. LEXIS 35853 *1, *5 (D. Ariz. March 23, 2015) ("Plaintiff argues...the FMLA requires the employer to adjust the employee's work load and performance expectations to account for her FMLA time off…Plaintiff directs the Court to no provision of the FMLA or its implementing regulations that support this theory."). This theory of liability essentially recasts Plaintiff's claim for failure to accommodate in violation of the ADA. This Court finds no basis in law to expand the protections of the FMLA in the way Plaintiff seeks, especially where there already exists a statutory framework to redress the injury alleged here. Based on this theory of liability, summary judgment is granted in favor of Defendant.

C. <u>Termination Because of Invocation of Rights</u>

To the extent that Plaintiff's FMLA claim for interference is based on Defendant's decision to terminate Plaintiff after Plaintiff requested her third FMLA-qualifying leave, both Plaintiff and Defendant's Motions for Summary Judgment are denied. The Third Circuit recognizes a cause of action for interference where an employee is terminated for a valid request for FMLA leave. <u>Erdman v. Nationwide Ins. Co.</u>, 582 F.3d 500, 509 (3d Cir. 2009). But a plaintiff is not entitled to FMLA protection for any termination unrelated to Plaintiff's invocation of his or her rights under the Act. <u>Sarnowski v. Air Brooke Limousine, Inc.</u>, 510 F.3d 398, 403 (3d Cir. 2007) (internal citations omitted); <u>See</u>, <u>Warwas v. City of Plainfield</u>, 489 F. App'x 585, 588 (3d Cir. 2012) (granting summary judgment in favor of the defendant because the plaintiff "was terminated not for her use of FMLA leave, but rather for the perceived misuse of the leave and for her failure to return to work."). Thus, to prevail on this theory of liability, Plaintiff would have to prove that Plaintiff's valid request for FMLA-qualifying leave – and not her alleged work performance – was the basis for her termination.

As is addressed more thoroughly in the retaliation section that follows, the Court finds that Plaintiff adduces sufficient evidence for a reasonable fact-finder to conclude that Plaintiff was terminated because of her third request for FMLA-qualifying leave. The temporal proximity between Plaintiff's final leave request and Defendant's decision to terminate Plaintiff is suggestive of discriminatory animus. Adams's repeated references to Plaintiff's FMLA-qualifying intermittent leave are arguably indicative of hostility toward Plaintiff's invocation of her FMLA-protected rights. Plaintiff was replaced by a QVC employee who never sought FMLA-qualifying leave. And the change in Plaintiff's performance rating after the January 2014 calibration meeting is sufficient to cast doubt on Defendant's assertion that Plaintiff's termination was the result of poor work performance. These facts could conceivably support a finding in Plaintiff's favor under this theory of liability. The basis for Defendant's termination decision is a question of fact for the fact-finder, and this Court finds sufficient

evidence in the record to support a judgment in favor of either party. As such, this Court denies both Defendant and Plaintiff's Motions as they relate to this claim, premised on this theory of liability.

Given the foregoing, summary judgment is granted in favor of Defendant on all but one of Plaintiff's theories of liability. Plaintiff's interference claim survives summary judgment only to the extent that it alleges Defendant terminated Plaintiff because of Plaintiff's valid request for FMLA-qualifying leave.

II.     **Discrimination and Retaliation under the Family Medical Leave Act (Count II)**

The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the Act. 29 U.S.C. § 2615(a)(2). Although neither § 2615(a)(2) nor § 2615(a)(1) "expressly forbids employers from terminating employees for having exercised or attempted to exercise FMLA rights, a Department of Labor regulation has interpreted the sum of the two provisions as mandating this result." Lichenstein, 691 F.3d at 301(internal quotations omitted). "Under this regulatory interpretation, employers are barred from considering an employee's FMLA leave as a negative factor in employment actions such as hiring, promotions or disciplinary actions." Id. Thus where a plaintiff alleges retaliation on the basis of the plaintiff's valid exercise of his or her FMLA rights, the claim is generally seen as arising under § 2615(a)(2) and is broadly referred to as a "retaliation claim." Id. The Third Circuit recognizes a cause of action where a plaintiff is fired in retaliation for requesting FMLA-qualifying leave, even if the plaintiff has yet to take the leave. Erdman, 582 F.3d at 509.

In Count II of the Amended Complaint, Plaintiff alleges that Defendant "discriminated and retaliated against [Plaintiff] because she exercised her rights that should have been protected under the FMLA." (ECF No. 2, ¶ 33). FMLA retaliation claims are assessed "through the lens" of employment discrimination law because the claims require proof of the employer's retaliatory intent. Lichtenstein,

691 F.3d at 302. As such, where a plaintiff's claim is based on direct evidence the court assesses the sufficiency of the plaintiff's case under the mixed-motive framework delineated in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 276-277 (1989). <u>Ross</u>, 755 F.3d at 193 (internal citations omitted). And where a plaintiff's claim rests entirely on circumstantial evidence, the sufficiency of the claim is assessed under the burden-shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Id.</u> Despite Plaintiff's arguments to the contrary, it is apparent that the record is bereft of any direct evidence that Plaintiff's termination was the result of impermissible retaliation. Thus, as Plaintiff's claim is premised on circumstantial evidence of retaliatory animus, the Court proceeds employing the burden-shifting framework of <u>McDonnell Douglas</u>.

Under the <u>McDonnell Douglas</u> framework, Plaintiff has the initial burden of presenting a prima facie case of retaliation. <u>Ross</u>, 755 F.3d at 193. Following such a showing, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action at issue. <u>Id.</u> Once Defendant has so articulated, the burden shifts back to Plaintiff to prove by a preponderance of the evidence, that Defendant's proffered reason for its adverse action is simply pretext for unlawful retaliation. <u>Id.</u> Defendant moves for summary judgment on this claim on the grounds that Plaintiff can neither establish a prima facie case of retaliation, nor prove Defendant's articulated reason for its adverse employment action is pretext for retaliatory animus. (ECF No. 59, p. 20). This Court disagrees, and for the reasons that follow, finds that summary judgment is inappropriate here.

A. <u>Prima Facie Case of Retaliation</u>

To establish a prima facie case of retaliation under the FMLA, Plaintiff must demonstrate "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of her rights." <u>Lichtenstein</u>, 691 F.3d at 302. For the purposes of this Motion, Defendant does not challenge the sufficiency of the evidence to establish the first and second prongs of the standard. (ECF No. 59, p. 19). Instead, Defendant argues that

Plaintiff cannot establish a causal nexus between Plaintiff's FMLA-qualifying leave and her subsequent termination. (ECF No. 59, p. 18).

Applying employment discrimination principles, it is under "narrow circumstances" that the proximity in time between protected activity and the adverse employment action is sufficient, *on its own*, to establish the requisite causal connection. Gladysiewski v. Allegheny Energy, 398 F. App'x 721, 724 (3d Cir. 2010) (internal quotations omitted). "Where temporal proximity is not so close as to be unduly suggestive, the appropriate test is timing plus other evidence." Watson v. Rozum, 834 F.3d 417, 424 (3d Cir. 2016) (internal quotations omitted). This "other evidence" could be any circumstantial evidence that bolsters the suggestion of retaliatory animus, including ongoing antagonism, or evidence that an employer gave inconsistent reasons for termination. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-281 (3d Cir. 2000). Ultimately, the court must consider "how proximate the events actually were, and the context in which the issue came before" the court. Id. at 279. Rare though it may be, this Court finds that given the facts of this case, temporal proximity is a sufficient basis for a finding of causality here.

The facts of record, provided above, establish the following: Voelker, Plaintiff's immediate supervisor, received notice of Plaintiff's intention to take what, concededly, would have been FMLA-qualifying leave in early February of 2014; discussions about Plaintiff's termination began as soon as two weeks thereafter; and Plaintiff was ultimately terminated one month after requesting leave for her third surgery, and less than three weeks before Plaintiff's requested leave was scheduled to begin. This Court is satisfied that in this case, the timing of Defendant's decision to terminate Plaintiff in relationship to Plaintiff's exercise of her rights under the FMLA is sufficient to create an inference of retaliatory animus.

This inference is strengthened when the Court considers the temporal proximity in conjunction with other circumstantial evidence in the record. On at least three occasions, Plaintiff's former supervisor specifically referenced Plaintiff's FMLA-qualifying leave and its effect on Plaintiff's performance. In the email dated April 25, 2013, Adams commented on the "huge chunks of time" Plaintiff spent out of the office – reportedly for doctor's appointments and physical therapy – and its impact on Plaintiff's availability for team meetings. The corrective action plan administered to Plaintiff on April 25, 2013 also explicitly referenced Plaintiff's absences as effecting Plaintiff's work performance. In an email dated April 26, 2013, Adams sent Gill a calendar grid reflecting all of Plaintiff's absences and the reasons given therefor, for the express purpose of alerting Gill to the amount of time Plaintiff spent out of the office. Moreover, Plaintiff was replaced by an employee who had never requested or taken FMLA-qualifying leave. These facts, when taken together, arguably suggest a concern among Defendant's managerial staff about Plaintiff's exercise of her rights under FMLA to take qualifying leave. Thus, whether through temporal proximity alone or "timing-plus," this Court is satisfied that Plaintiff is able to establish a prima facie case of retaliation.

B. Showing of Pretext

Having found an adequate showing of prima facie retaliation, the burden shifts to Defendant to articulate a lawful reason for Plaintiff's termination. Under the burden-shifting framework of McDonnell Douglas, Defendant must only articulate, not prove, a legitimate and non-retaliatory reason for Plaintiff's discharge. McDonnell Douglas, 411 U.S. at 803. Defendant undoubtedly satisfies its burden. As set forth in the factual background section above, Plaintiff received numerous warnings and experienced increasing levels of discipline for her deficient performance. Beyond issues with Plaintiff's actual work product, Defendant details numerous incidences of insubordination and hostility toward QVC staff and clients alike. Termination for poor work performance and continuous employee infractions is legitimate and non-discriminatory. Ross, 755 F.3d at 194. As such, Defendant satisfies its

burden of production under <u>McDonnell Douglas</u>, and Plaintiff is tasked with demonstrating that Defendant's proffered reason for Plaintiff's termination is pretext for actionable retaliation. Plaintiff can demonstrate pretext by presenting evidence that would allow the fact-finder to either disbelieve Defendant's articulated reason for Plaintiff's termination or believe retaliatory animus was more likely than not the real reason for Plaintiff's discharge. <u>Jones v. Sch. Dist. of Philadelphia</u>, 198 F.3d 403, 413 (3d Cir. 1999).

The following facts are referenced in the background section above. On January 16, 2014, Gill sent other members of Defendant's executive staff a Talent Profile in which Plaintiff was rated a three for her performance during the 2013 calendar year, and was designated a "solid performer." The next day, a calibration meeting was held and QVC supervisors discussed the performance of their respective subordinates, including Plaintiff.  Adams – who previously expressed concern about the time Plaintiff spent out of the office on protected leave – was present at the January 2014 calibration meeting and participated therein. Following the meeting Voelker prepared and administered Plaintiff's 2013 performance evaluation, in which Plaintiff was rated a two and designated a "low performer with potential." The parties disagree on the reason for the difference in ratings, but with this evidence, Plaintiff adduces sufficient facts from which a reasonable fact-finder could question the legitimacy of Plaintiff's last performance evaluation. This evidence creates a genuine issue of fact as to the true reason for Plaintiff's termination.

It is not lost upon this Court that what Plaintiff alleges is, in essence, a large scale conspiracy by QVC employees of all departments to lie about incidences of insubordination and unprofessionalism and conjure up reasons to find Plaintiff's performance deficient. For Plaintiff's retaliation claim to be true, it would necessarily mean that Defendant's executive staff all colluded to frame Plaintiff and surreptitiously force her termination. But ultimately, this Court is not faced with the question of whether it would find Plaintiff's evidence of pretext convincing. On summary judgment, the Court must consider

whether a reasonable fact-finder, reviewing the facts of record, could find Defendant's proffered non-retaliatory reason for Plaintiff's termination "unworthy of credence." Fuentes v. Perksie, 32 F.3d 759, 765 (3d Cir. 1994). This Court holds that a reasonable fact-finder could so find, especially where Plaintiff's termination was based in large part on subjective assessments of her work product and behavior. "Where termination decisions rely on subjective evaluations, careful analysis of possible impermissible motivations is warranted because such evaluations are particularly 'susceptible [to] abuse and more likely to mask pretext.'" Liu v. Amway Corp., 347 F.3d 1125, 1136 (9th Cir. 2003)(citing Weldon v. Kraft, Inc., 896 F.2d 793, 798 (3d Cir. 1990)).

Plaintiff is able to establish a prima facie case of unlawful retaliation and adduces sufficient evidence for a reasonable fact finder to conclude that retaliatory animus motivated Plaintiff's termination. Defendant is, therefore, not entitled to judgment as a matter of law with respect to Plaintiff's claim of unlawful retaliation in violation § 2615 of the FMLA.

III.     **Discrimination under the Americans with Disabilities Act (Count III)**

The ADA provides that: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, a "qualified individual with a disability" is defined as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A plaintiff makes a prima facie showing of discrimination in violation of the ADA where he or she can demonstrate: "(1) he or she is disabled within the meaning of the ADA; (2) he or she is otherwise qualified to perform the essential functions of the position, with or without reasonable accommodations by the employer; and (3) he or she has suffered an adverse

employment action as a result of discrimination. Williams v. Philadelphia Hous. Auth. Police Dept., 380 F.3d 751, 761 (3d Cir. 2004) (internal quotations omitted).

In Count III of the Amended Complaint, Plaintiff alleges that Defendant engaged in a pattern of discrimination on the basis of Plaintiff's known disability, which culminated in Plaintiff's unlawful termination. (ECF No. 2, ¶ 40). Plaintiff's ADA discrimination claim is premised on two theories of liability. First Plaintiff argues that Defendant discriminated against Plaintiff in violation of the ADA by failing to provide Plaintiff with reasonable accommodations for her disability. (ECF No. 63, p. 57). Second, Plaintiff argues that Defendant terminated Plaintiff's employment because of her known physical disability. (ECF No. 63, p. 9). For the reasons that follow, this Court will grant summary judgment in favor of Defendant to the extent that Plaintiff alleges a failure to accommodate and deny summary judgment to the extent that Plaintiff alleges unlawful termination on the basis of disability.

A. Failure to Accommodate

To the extent that Plaintiff's ADA discrimination claim is based on a failure to accommodate theory of liability, summary judgment is granted in favor of Defendant. In the absence of undue hardship, "the ADA specifically provides that an employer discriminates against a qualified individual with a disability when the employer does not make reasonable accommodations to the known physical or mental limitations of the individual…." Williams, 380 F.3d at 761. The requirement that an employer "reasonably accommodate" a qualified individual with a disability includes a requirement that the employer engage in reasonable efforts to assist the employee and to communicate with the employee about his or her need for accommodation. Id. Plaintiff argues that Defendant is liable for failure to accommodate under the ADA because Defendant did not reasonably or meaningfully engage in this interactive process of ascertaining Plaintiff's need for accommodation. (ECF No. 63, p. 57).

"An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." <u>Colwell v. Rite Aid Corp.</u>, 602 F.3d 495, 504 (3d Cir. 2010). Based on the facts of record, Plaintiff cannot make a prima facie showing of ADA discrimination on the basis of failure to accommodate.

A reasonable accommodation is any change in the work environment or in the way work is customarily done that enables an individual with a disability to enjoy equal employment opportunities. 29 C.F.R. § 1630.2(o). The ADA specifically references "part-time or modified work schedules" as an example of a reasonable accommodation. 42 U.S.C. 12111(9)(B). While there is no evidence in the record that Defendant explicitly inquired about Plaintiff's condition or held meetings to address Plaintiff's need for accommodation, it is clear that Defendant considered and approved each of Plaintiff's requests for schedule modification and leave. By Plaintiff's own admission, Defendant granted each of Plaintiff's requests for leave and permitted Plaintiff to come to work early on days when Plaintiff needed time off for physical therapy and doctor's appointments. Nothing in the record suggests that Plaintiff requested or required any accommodation beyond that which Defendant provided. In fact, Plaintiff admits that she was able to perform the essential functions of her job throughout her entire tenure as Defendant's employee. (ECF No. 59-2, ¶ 73-74).

Even the case upon which Plaintiff primarily relies lends itself to a finding for Defendant in this context. See <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.2d 296, 317 (3d Cir. 1999) ("Employers can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the

employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome."). Defendant undoubtedly showed signs of having considered Plaintiff's requests, and as such, Plaintiff cannot show that Defendant acted in bad faith as it relates to Defendant's obligation to provide reasonable accommodations for Plaintiff's disability. Summary judgment is granted in favor of Defendant as it relates to this theory of liability.

      B. <u>Termination on the Basis of Disability</u>

      To the extent that Plaintiff's ADA discrimination claim is based on the theory that Plaintiff was terminated because of her physical disability, summary judgment is denied. The <u>McDonnell Douglas</u> burden-shifting framework is applied to ADA cases that are – like the instant case – based on circumstantial evidence. <u>Parker v. Verizon Pa., Inc.</u>, 309 F. App'x 551, 555 (3d Cir. 2009). As described in the preceding section, under this scheme, Plaintiff bears the initial burden of establishing a prima facie case of discrimination. <u>Id.</u> (quoting <u>McDonnell Douglas</u>, 411 U.S. at 802). Once Plaintiff makes a prima facie showing of discrimination, the burden then shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. <u>Id.</u> And if Defendant meets said burden, Plaintiff must demonstrate that Defendant's articulated reason is pretext for unlawful discrimination. <u>Id.</u>

      As described above, to establish a prima facie case of ADA discrimination, a plaintiff must demonstrate: (1) he or she is disabled within the meaning of the ADA; (2) he or she is otherwise qualified to perform the essential functions of the position, with or without reasonable accommodations by the employer; and (3) he or she has suffered an adverse employment action as a result of discrimination. <u>Williams</u>, 380 F.3d at 761 (internal quotations omitted). Defendant does not challenge the sufficiency of the evidence to establish the first and second prongs of the prima facie standard. Defendant instead focuses its argument on Plaintiff's ability to demonstrate her termination was based on her disability, rather than her documented history of deficient performance. (ECF No. 59, p. 23). As

with Plaintiff's FMLA retaliation claim, and for all the same reasons stated above, this Court is satisfied that there is sufficient evidence to establish a prima facie showing of discrimination on the basis of disability. Plaintiff was terminated within a month of her third request for leave and less than three weeks before Plaintiff was scheduled to undergo the surgery necessitated by her disability. Plaintiff's former supervisor made repeated disapproving reference to the time Plaintiff spent out of the office, most of which was reportedly necessary to manage Plaintiff's arthritis-related pain. And Plaintiff was replaced by an employee with no known disability. This, taken altogether, suffices to establish a prima facie case of discrimination in violation of the ADA.

The Court is similarly satisfied that Plaintiff has adduced sufficient evidence upon which a reasonable fact-finder could disbelieve Defendant's articulated reason for Plaintiff's termination –poor work performance – or find that Plaintiff's termination was more likely than not motivated by discriminatory animus. As explained in the FMLA retaliation section above, the Court finds some support in the record for Plaintiff's allegation that Defendant manipulated Plaintiff's annual performance evaluations to justify its termination decision. Because Plaintiff makes a prima facie showing of discrimination and adduces sufficient evidence to cast doubt on Defendant's articulated reason for Plaintiff's termination, this Court finds that summary judgment is inappropriate here. Defendant's Motion is denied as it relates to Plaintiff's claim for ADA discrimination, but only insofar as Plaintiff alleges termination on the basis of disability.

IV. **Liquidated Damages**

Plaintiff seeks summary judgment on the issue of liquidated damages resulting from Defendant's FMLA violations. Having found that Plaintiff is not entitled to judgment as a matter of law on either of her FMLA claims, this Court finds that summary judgment would be inappropriate as to the remedy sought. Plaintiff's Motion is denied to the extent that it seeks summary judgment on the issue of damages.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Partial Motion for Summary Judgment is denied in its entirety and Defendant's Motion for Summary Judgment is granted in part and denied in part. Summary judgment is granted in favor of Defendant on Plaintiff's FMLA interference claim only to the extent that Plaintiff's claim is premised on Defendant's alleged violations of the FMLA notice and designation requirements, or on Defendant's alleged failure to adjust Plaintiff's workload and performance goals. Summary judgment is also granted in favor of Defendant on Plaintiff's ADA discrimination claim, but only to the extent that Plaintiff's claim is premised on an alleged failure to reasonably accommodate Plaintiff's physical disability.

A corresponding Order follows.

BY THE COURT:


/s/ C. Darnell Jones, II
C. Darnell Jones, II    J.
